**Rafael TIRADO, Petitioner,**

v.

**James WALSH, Superintendent Sullivan Correctional Facility, Respondent.**

**No. 01 CIV. 2913(VM).**

United States District Court, S.D. New York.

Oct. 22, 2001.

**164**

Rafael Tirado, Fallsburg, NY, pro se.

### DECISION AND ORDER

MARRERO, District Judge.

Petitioner Rafael Tirado ("Tirado") filed the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 now before this Court challenging his conviction in New York State court for criminal sale of a controlled substance in the third degree (New York Penal Law § 220.39) and criminal possession of a controlled substance in the seventh degree (New York Penal Law § 220.03). The judgment was rendered on July 20, 1998 in the New York Supreme Court, Bronx County, following a trial by jury. Tirado was sentenced to an indeterminate prison term of four and one-half to nine years on the sale count and to one year on the possession count, with the terms to run concurrently.

On direct appeal to the Appellate Division, First Department, Tirado, through counsel, argued (1) that the trial court improperly reopened his suppression hearing, allowing the prosecution's witness,

who was the arresting officer, to contradict his earlier testimony and (2) the arresting officer's contradictory testimony at the suppression hearing was not credible.

On November 30, 1999, Tirado's conviction was affirmed. *See People v. Tirado,* 266 A.D.2d 130, 698 N.Y.S.2d 484 (N.Y.A.D. 1st Dept.1999). The Appellate Division ruled that "the [trial] court appropriately exercised its discretion in reopening the suppression hearing, prior to any decision on the merits, to permit further questioning of the People's witness where the court and the parties expressed some confusion regarding one aspect of the witness's testimony." *Id.* The appellate court further held that the hearing court properly denied Tirado's suppression motion and that there was "no reason to disturb the court's credibility determinations, which are supported by the record." *Id.* Tirado's application for leave to appeal to the New York Court of Appeals was denied on December 28, 1999. *See People v. Tirado,* 94 N.Y.2d 867, 704 N.Y.S.2d 544, 725 N.E.2d 1106 (1999).

On or about March 9, 2001, Tirado's petition and supporting papers were filed in this Court. Tirado raises essentially the same issues asserted in his direct appeal. Respondent (herein, the "State") seeks denial or dismissal of the petition on the grounds that (1) the claim regarding the arresting officer's allegedly incredible testimony at the suppression hearing was unexhausted in that it was not presented to the highest state court and should be deemed forfeited and that, in any event, the credibility claim is not cognizable under federal habeas law, and, accordingly, cannot be reviewed by this Court; (2) the claim that the arresting officer's testimony at the suppression hearing and reopened hearing was "incredible" is procedurally barred from review pursuant to *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49

L.Ed.2d 1067 (1976); and (3) the claim that the trial court improperly reopened the suppression hearing does not present a federal question and that, in any event, the claim is unexhausted since Tirado did not present it to the state court in federal constitutional terms.

For the reasons set forth below, the writ is denied, and Tirado's petition is dismissed with prejudice.

### FACTS

On December 7, 1996, New York City police Detective George Moreno ("Moreno") received radio calls stating that a woman had sold drugs to an undercover officer in the lobby of a five-story apartment building located at 675 East 140th Street, Bronx, New York. The sale involved three orange-topped vials of crack cocaine exchanged for six dollars, five of which consisted of a pre-recorded five-dollar bill. During the transaction, the woman allegedly whistled to signal an individual on a floor upstairs, and the undercover agent reportedly heard an answer in the voice of a male Hispanic. Responding to the call, Moreno arrested Denise Morris, Tirado's co-defendant, outside the building where the sale had occurred.

While Moreno was arresting Morris, a second police officer, Hector Nolasco ("Nolasco"), who was working as a "ghost" officer following the undercover agent, went inside the building. Moreno waited with Morris until the undercover officer conducted a drive-by identification of Morris shortly after the sale. Moreno then received another radio call from Nolasco stating that he saw a male Hispanic on the second floor look at him and then enter an apartment on that floor.

Moreno went into the building, meeting Nolasco and another officer on the second floor. They knocked on the door of apartment 2C and, after identifying themselves

as police officers and asking for permission to enter to see if there was anyone else inside, were admitted by an unknown male. In a rear bedroom of the apartment, Moreno found Tirado. Nolasco confirmed that Tirado was the person he had seen entering the apartment.

Moreno recovered $598.00 from Tirado, including the pre-recorded five-dollar bill used as the drug buy money. Moreno also recovered sixty-eight orange-topped vials of crack cocaine from the bedroom floor approximately two feet away from where Tirado was standing.

Tirado moved to suppress the evidence gathered at the scene of his arrest, arguing that the police had no basis to pursue him into the second floor apartment because the radio call Moreno had received from the undercover officer regarding the transaction had nothing to do with Tirado. Counsel argued that the undercover officer's side comment about having heard a male Hispanic voice upstairs did not necessarily indicate that a male Hispanic was involved in the drug transaction in any way.

The State contended that Morris went up to a second floor landing and whistled; that a Hispanic male whistled back; and that Morris then returned with the drugs to complete the sale. According to the State, the involvement of a second person in the transaction provided the police sufficient reason to enter and search the apartment where Tirado was found.

After the close of the suppression hearing, the State moved to reopen the hearing and recall Moreno. The trial court granted the motion, over Tirado's objection that it was improper to reopen the hearing to enable the State's witness to fill in gaps in his testimony.

During the reopened hearing, Moreno was asked the same question he had answered during the original hearing regarding the basis for pursuing Tirado into the apartment. He responded that after Morris had entered the lobby and whistled, another voice sounding like a male Hispanic had whistled, and then Moreno elaborated that Morris had walked upstairs and then had returned downstairs with the drugs—a fact he had omitted from his earlier testimony.

The trial court credited Moreno's account of the events, holding that under the totality of the circumstances, and weighing the additional facts that Moreno had provided at the reopened hearing, there was sufficient cause for the police to pursue Tirado into the apartment after having obtained consent to enter from the resident who had opened the door.

## DISCUSSION

Invoking the Fourth and Fourteenth Amendments of the United States Constitution, Tirado's petition raises the same two issues he argued on direct appeal. First, he asserts that Moreno's testimony at the suppression hearing and the reopened hearing, where he contradicted himself, was not credible. The State counters that, while on direct appeal Tirado advanced this present claim, he did not present it to the highest state court in his leave application and that consequently the claim is unexhausted. The State further contends that because there is no available state corrective process, the claim should be deemed exhausted, but forfeited for federal habeas review, and that, pursuant to *Stone,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, habeas review of Tirado's Fourth Amendment claim is precluded.

### A. *EXHAUSTION*

 Before a federal court may consider a petition for habeas corpus relief, a petitioner, such as Tirado, must first ex-

haust all applicable state remedies. *See* 28 U.S.C. §§ 2254(b)(1)(A) & (c); *Daye v. Attorney General of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). The state courts, including the highest court so authorized, must have been presented with the opportunity to consider a petitioner's constitutional claim and to render a determination on the merits before a petitioner may seek review at the federal level. *See Henry v. Scully*, 918 F.Supp. 693 (S.D.N.Y.1995), *aff'd*, 78 F.3d 51 (2d Cir.1996).

■ To satisfy this mandate, a petitioner must pursue all avenues of relief available through state legal procedure and avail himself of all established mechanisms to secure further state appellate review should his initial request for relief be denied. *See (Klein v. Harris*, 667 F.2d 274, 282 (2d Cir.1981)). In addition, a petitioner may only proceed to federal court arguing the same legal point, or the substantial equivalent, that was presented in his claim at the state level. *See Grey v. Hoke*, 933 F.2d 117 (2d Cir.1991). The requirement of parallel submissions and arguments includes all "factual allegations and legal theories", (*Henry*, 918 F.Supp. at 700), and the claim must involve more than merely state law. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).

■ Here, the State contends that Tirado failed to exhaust his claim concerning the arresting officer's testimony because he did not present it before the New York's highest state court. *See* Memorandum of Law in Opposition to Petition, dated June 2001 (the "State Memo"), at 5–11. This Court agrees.

The record indicates that Tirado, by letter application, filed for leave to appeal to the Court of Appeals from the Appellate Division's decision affirming his conviction.

With his request, Tirado transmitted copies of the briefs filed in the Appellate Division and informed the court that he was "submitting this letter as an application for permission to appeal to the Court of Appeals". Affidavit of Kimberly Morgan, sworn to June 28, 2001 ("Morgan Aff."), Ex. 4. Tirado submitted no further correspondence detailing for the Court of Appeals why leave should be granted in his case. Instead, Tirado informed the court that his only letter to the Court "constitute[d][his] full leave application and will not be supplemented by further papers unless requested by the assigned Judge." *Id.*

In the letter application, Tirado addressed only the trial court's ruling to allow the State to reopen the suppression hearing, arguing that such a decision was erroneous and presented a "leaveworthy issue" for the Court of Appeals. *Id.* Tirado made no reference to the issue of Moreno's allegedly incredible testimony as an additional reason for the Court of Appeals to grant leave for appeal.

In response to this deficiency, Tirado maintains that his direct appeal brief to the Appellate Division, citing chapter and verse to the Fourth and Fourteenth Amendments of the United States Constitution, specifically set forth his challenge to the credibility of Moreno's testimony at the suppression hearing and that he enclosed these briefs with his request to the Court of Appeals for leave to appeal. *See* Tirado Memorandum of Law in Support of Petition, dated Aug. 27, 2001 ("Tirado Memo"), at 14–23. Tirado thus argues that by these means he sufficiently presented this issue before the Court of Appeals for consideration and the claim should not be considered unexhausted. *See id.* This Court disagrees.

Mere enclosure with his letter application of the briefs Tirado filed in the Appellate Division did not exhaust his claim regarding Moreno's alleged incredibility because Tirado did not specifically request the court to review the remaining issues contained in his brief. Rather, Tirado directed the Court's attention solely to a single issue concerning the trial court's reopening of the suppression hearing.

■ In order to exhaust a claim for federal habeas purposes, it is the petitioner's burden to identify specifically to the state appellate courts the issues upon which his request for leave to appeal is grounded. *See Jordan v. Lefevre*, 206 F.3d 196, 198–99 (2d Cir.2000). As a practical matter, a rule obligating a petitioner to clearly identify all issues presented in a leave application is required in order to provide sufficient information to fairly apprise the state appellate courts of the factual and legal issues for which leave to appeal is sought. *See id.* at 198; *Perez v. Greiner*, No. 99 Civ. 11806, 2000 WL 915114, at *4 (S.D.N.Y. July 5, 2000). Precisely addressing these principle, the Second Circuit has stated that "[c]ounsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave." *Jordan*, 206 F.3d at 199.

This Court concludes that because Tirado specifically raised the credibility of Moreno's suppression hearing testimony as an issue upon which he sought leave, but did not seek review of any other issues addressed in the Appellate Division briefs beyond objection to the trial court's reopening of the suppression hearing, he has failed to exhaust this claim.

When a petitioner presents such unexhausted claims in a federal habeas corpus petition, he must return to state court to seek any adequate state remedies that may exist. *See Engle v. Isaac*, 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). However, under the doctrine of *Teague v. Lane*, 489 U.S. 288, 297–99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), if a petitioner has no state forum in which to pursue a state remedy because of a procedural bar, the claim then may be deemed exhausted, yet forfeited, unless cause and prejudice can be shown. Accordingly, this Court need not require Tirado to return to state court to further pursue his claims if it is clear that state law procedurally bars those claims. *See Grey*, 933 F.2d at 120.

Tirado cannot again seek leave to appeal his claims to the Court of Appeals because he has made the one leave request to that court to which he is entitled under New York Law. *See* New York Rules of Court § 500.10(a). Thus, this Court must deem Tirado's credibility claim exhausted but forfeited, unless he can demonstrate cause for his failure to properly raise the issue, as well as associated prejudice. *See Grey*, 933 F.2d at 121.

■ The cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise a claim in state court. *See McCleskey v. Zant*, 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Objective factors that constitute cause under this standard include a showing that the factual or legal basis for a claim was not reasonably available and that some interference by officials made compliance impracticable. *See id.* at 493–94, 111 S.Ct. 1454. Thus, the " 'cause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (emphasis added).

■ If the petitioner can establish cause, he must still show "actual prejudice" resulting from the errors of which he complains. *McCleskey*, 499 U.S. at 494, 111 S.Ct. 1454. This means that he must show that the alleged errors worked to his actual and substantial disadvantage. *See Frady*, 456 U.S. at 168, 102 S.Ct. 1584. However, if the petitioner cannot show valid "cause," the federal habeas court need not consider "prejudice". *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

■ If the alleged errors have cause a "fundamental miscarriage of justice," this Court may excuse a procedural default "even without a showing of cause and prejudice." *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.1993), *cert. denied*, 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Such an "extraordinary case" occurs only "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 1447. Petitioner has the burden of demonstrating that he is "actually innocent" by showing there is "a fair probability that ... the trier of the facts would have entertained a reasonable doubt of his guilt." *Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir.1994) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986)).

■ Because entertaining claims of actual innocence is very disruptive to the finality of criminal cases and places an enormous burden on the states to retry cases based on stale evidence, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Absent new, exculpatory evidence, "even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

■ Here, the record contains no indication of either cause or prejudice associated with Tirado's failure to specify his credibility claim in his application for leave to appeal. Nor, given the substantial direct and circumstantial evidence supporting a reasonable jury's verdict finding Tirado guilty, is there anything in the record indicating that a fundamental miscarriage of justice would result if Tirado's claims were not entertained on the merits. Accordingly, this Court dismisses Tirado's credibility claim in the instant petition without reaching the merits. *See Grey*, 933 F.2d at 121.

**B. Preclusion Pursuant to Stone v. Powell**

■ When Tirado raised his claims to the Appellate Division on direct appeal, he specifically relied, as one of the principal grounds for appeal, on the alleged unconstitutional search and seizure associated with his arrest in violation of the Fourth Amendment of the federal Constitution. This Court, however, may not grant habeas corpus relief regarding a Fourth Amendment claim where the petitioner was afforded an opportunity for a full and fair litigation of the issue before the state courts. *See Stone*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067; *Kuhlmann*, 477 U.S. at 446–47, 106 S.Ct. 2616; State Memo at 12–13.

■ Here, the record clearly demonstrates that not only did Tirado have a full pretrial suppression hearing on this issue, but the Appellate Division reviewed the trial court's decision on direct appeal. Moreover, although the New York Court of Appeals declined to address Tirado's

Fourth Amendment claims, Tirado was also given an opportunity to present them to the highest state court. Thus, Tirado cannot claim that he was denied this opportunity. *See Grey*, 933 F.2d at 121; *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978).

Moreover, even if *Stone* did not preclude habeas review of Tirado's claim, there is further reason why this Court still could not review it. At bottom, Tirado takes issue with the trial court's assessment of Moreno's credibility and its decision to admit and credit Moreno's testimony at the suppression hearing. *See* Tirado Memo at 14–23. Tirado's claim consequently raises fundamental issues fraught with far-reaching implications. It is not within the purview of a federal court on habeas review to reassess and pass judgment upon the credibility of a witness whose testimony and demeanor it has not observed. *See Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). On this additional basis, this Court declines to entertain Tirado's credibility claim and concludes that the claim must be dismissed.

### C. *HEARING REOPENING*

■ The second ground Tirado's petition asserts in support of habeas relief is that the state court improperly reopened the suppression hearing, allegedly allowing Moreno to contradict his earlier testimony. The State contends that this claim does not entitle Tirado to habeas relief because it does not present a federal question. *See* State Memo at 14–19. This Court agrees.

■ Federal courts may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

■ As a general matter, a ruling by a state trial court on an evidentiary question is a matter of state law that poses no constitutional issue. *See Benitez v. Senkowski*, No. 97 Civ. 7819, 1998 WL 668079, at *4 (S.D.N.Y. Sept. 17, 1998) (quoting *Roberts v. Scully*, 875 F.Supp. 182, 189 (S.D.N.Y.), *aff'd*, 71 F.3d 406 (2d Cir. 1995)). A writ may issue, however, in the event that an evidentiary ruling has rendered a trial fundamentally unfair. *See Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.), *cert. denied*, 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998).

Here, Tirado's assertion that the State court improperly reopened the suppression hearing thereby allegedly allowing the prosecution witness to contradict his earlier testimony, was clearly a matter of state law. *See* Tirado Memo at 23–26. It is thus not a claim cognizable on federal habeas review. *See United States ex rel. Sadowy v. Fay*, 284 F.2d 426, 427 (2d Cir.1960), *cert. denied*, 365 U.S. 850, 81 S.Ct. 814, 5 L.Ed.2d 814 (1961).

Tirado characterizes his second ground for relief as a "due process" claim purportedly based on Fourth and Fourteenth Amendments of the federal Constitution. *See* Tirado Memo at 25. The objection, however, essentially relates to a trial court decision grounded on state law. Tirado relies on New York Criminal Procedure Law § 710.40(4), to argue that, a request to reopen a suppression hearing is usually made by a defendant and that "[t]here

[was] no statutory authority for reopening a hearing on the People's motion" where the prosecution has had a full opportunity to present evidence at a suppression hearing. Morgan Aff., Ex. 1 at 14–15.

 Under New York law, however, it is within the trial court's discretion to reopen a suppression hearing, and there is no prohibition to a reopening on request of the prosecution. *See People v. Mercado,* 62 N.Y.2d 866, 478 N.Y.S.2d 253, 466 N.E.2d 845 (1984); *People v. Harrington,* 193 A.D.2d 756, 597 N.Y.S.2d 723 (N.Y.A.D. 2d Dept.), *leave to appeal denied,* 82 N.Y.2d 754, 603 N.Y.S.2d 996, 624 N.E.2d 182 (1993). In exercising this discretion, the trial court should consider factors such as the timing of and the basis for the motion. *See People v. Hernandez,* 124 A.D.2d 893, 508 N.Y.S.2d 311 (N.Y.A.D.3d Dept.1986).

In this case, Tirado claimed that the prosecution had no justification to reopen the suppression hearing because the evidence presented at the initial hearing failed to establish a lawful basis for Moreno to pursue Tirado into the apartment and arrest and search him. As the Appellate Division noted, the trial court's decision to reopen the hearing was made prior to any ruling on the merits of Tirado's suppression motion, and because "the court and the parties expressed some confusion regarding one aspect of the witness's testimony," the trial court appropriately exercised its discretion in reopening the suppression hearing. *Tirado* 698 N.Y.S.2d at 485. Thus, this Court concludes that the decision of the state appellate court was correct under state law and that Tirado's claim is not cognizable on habeas review. *See Estelle,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385.

On this precise point, the parties have not cited, nor has this Court found, any specific precedent or determination of the United States Supreme Court regarding federal law which the state courts may have contradicted or unreasonably misapplied in this case in affirming the reopening of the suppression hearing. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mask v. McGinnis,* 252 F.3d 85 (2d Cir.2001); 28 U.S.C. § 2254(d)(1). Accordingly, this Court concludes that AEDPA precludes the habeas relief Tirado requests.

### *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the writ is denied; and it is further

**ORDERED** that the petition is dismissed with prejudice.

The Clerk of Court is directed to close this case.

As Tirado has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). *See also United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011, 1014–16 (2d Cir.1997). The Court certifies that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**